J-S49043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREGORY SPRINGS | : | |
| | : | |
| Appellant | : | No. 2109 EDA 2017 |

Appeal from the Judgment of Sentence June 5, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003448-2016

BEFORE:   BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED DECEMBER 17, 2019**

Appellant, Gregory Springs, appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County after a jury found him guilty of third-degree murder and numerous firearm offenses stemming from his involvement in a neighborhood fight that ended when he shot a man, Frank Jones, to death.  He raises for our consideration issues implicating the weight of the evidence and the discretionary aspects of his standard range sentence.  We affirm.

The trial court has authored an opinion that aptly sets forth the relevant facts and procedural history, as follows:

### FACTS

[The victim,] Frank Jones[,] lived at 4673 North 16th Street in the City of Philadelphia with his live-in girlfriend, Tiffany Newton, and

---

[*] Former Justice specially assigned to the Superior Court.

their four children. On March 14, 2016, Jones had just gotten out of the shower when he heard a knock at the front door. Looking out the upstairs window, he saw that it was his neighbor, Kaniesha Johnakin, [and] her friend Megan Jones-Hilliard in front of his house. Newton answered the door. N.T. 3/15/17, at 78-84. Entering the house, Johnakin was upset, cursing, and [causing discord]. It seems that her boyfriend, Joe, [who was] working construction in Scranton, phoned her [and began to argue] with her that he knew [she] had another man in the house [and that the man] drove a white Chevy Malibu. Johnakin assumed that . . . Frank Jones[] had gotten word to Joe that [she] was cheating on him. Newton explained to Johnakin and Jones-Hilliard that they had to leave, as there were four young children upstairs getting ready for bed, and said that the intruders must get out. N.T. 3/15/17, at 81-92, 215-218.

Johnakin and Jones-Hilliard left the house, but Johnakin continued her cursing and yelling and threatening Newton on the yard between the houses. [It was then that] Appellant came out of Johnakin's house and, without saying a word, punched Frank Jones in the face. A fight ensued between the two men and then a battle erupted between Johnakin and Newton. N.T. 3/15/17, at 90-101, 220-224. The brawl between the two men broke up and Frank Jones then attempted to stop the scuffle between the two women.

Appellant returned to Johnakin's house as Frank Jones was pulling Newton out of her bout with Johnakin, which Jones-Hilliard had joined. N.T. at 100-105. Appellant came back out of Johnakin's house [with a] gun in [his] hand, walked down three steps from the porch of the house and fired eight shots, all at Frank Jones. N.T. at 100-110, 223-226.

Jones was wounded in his chest, hip, genitals, stomach, legs, and arm. [He] tried to get away, struggling down the street, where he finally collapsed. N.T. at 110-115, 188-198. Newton dialed 911 and the police responded quickly, finding Jones collapsed near the porch of a neighbor. Realizing the urgency, the officers did not wait for the medics, but scooped Jones up and drove him to Einstein Hospital where he was rushed into surgery. . . . Jones died of the gunshot wounds at 3:05 a.m. the next morning. N.T. 51-55, 184-85.

In the meantime, Appellant had fled out the back door of Johnakin's house, leaving his white Chevy Malibu at the crime scene. N.T. 3/16/17, at 16-17, 21-23. Appellant was identified by Johnakin, Jones-Hilliard, and Newton as the shooter. [Appellant fled to Atlanta, Georgia, but authorities arrested him in Philadelphia one week later with the aid of an anonymous tip that he was returning by bus].

. . .

**PROCEDURAL HISTORY**

Appellant was arrested and charged with murder, possession of a firearm prohibited, firearm not to be carried without a license, carrying firearms in public in Philadelphia, recklessly endangering another person and possessing an instrument of a crime on March 22, 2016. Appellant was bound over for court on all charges following a preliminary hearing on April 5, 2016. A jury convicted Appellant of third degree murder, carrying a firearm without a license, carrying firearms in public in Philadelphia and possessing the instrument of a crime, and he was subsequently sentenced to twenty to forty years' incarceration for the homicide with a consecutive two and one-half to five years' imprisonment for carrying a firearm without a license to be followed by five years' probation on the remaining charges. The aggregate sentence was twenty-two and one-half to forty-five years' incarceration followed by ten years' probation. Post-sentence motions were filed and denied. A timely notice of appeal was filed with the Superior Court.

Trial Court Opinion, 8/6/18, at 3-4, 1-2.

Appellant raises the following issues for our review:

1. [Was] the guilty verdict against the Appellant . . . against the weight of the evidence [so as to] shock the conscience[?]

2. [Was] the sentence imposed on the Appellant . . . excessive in light of all the circumstances[?]

Appellant's brief, at 5.

- 3 -

First, Appellant contends that the court erred in denying his post-sentence motion for a new trial where the weight of the evidence did not allow for the reasonable inference that he shot Frank Jones with requisite malice. We disagree.

A weight of the evidence challenge "concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Rayner*, 153 A.3d 1049, 1054 (Pa.Super. 2016) (citation omitted). Our standard of review for a claim that the verdict was against the weight of the evidence is as follows:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
> > Appellate review of a weight claim *is a review of the exercise of discretion*, *not of the underlying question of whether the verdict is against the weight of the evidence.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that

> the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations and quotation marks omitted) (emphasis in original). "Discretion is abused where the course pursued [by the trial court] represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000).

The Crimes Code defines murder as follows:

**§ 2502. Murder**

**(a) Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

**(b) Murder of the second degree.**—A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

**(c) Murder of the third degree.**—All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

* * *

18 Pa.C.S.A. § 2502(a)-(c).

> To establish the offense of third degree murder, the Commonwealth need only prove beyond a reasonable doubt that the defendant killed an individual, with legal malice, "*i.e.,* ... wickedness of disposition, hardness of heart, wantonness, cruelty, recklessness of consequences, or a mind lacking regard for social duty." *Commonwealth v. Johnson*, 719 A.2d 778, 785

- 5 -

(Pa.Super. 1998), *appeal denied,* 559 Pa. 689, 739 A.2d 1056 (1999) (citing **Commonwealth v. Young**, 494 Pa. 224, 227, 431 A.2d 230, 232 (1981) (holding sufficient evidence of malice existed to sustain third degree murder conviction, where defendant aimed loaded gun at victim and gun discharged, regardless of whether gun discharged accidentally or defendant intended only to scare victim)). Malice is established where an "actor consciously disregard[s] an unjustified and extremely high risk that his actions might cause death or serious bodily harm." **Id.** at 228, 431 A.2d at 232.

**Commonwealth v. Devine**, 26 A.3d 1139, 1146 (Pa.Super. 2011).

Specifically, Appellant centers his weight of the evidence claim on the respective testimonies of Tiffany Newton and Kaniesha Johnakin, who recounted that Appellant first aimed the gun downward, below Jones' waist, when he fired several shots into Jones before Jones approached him, at which time he fired additional shots that struck Jones' torso. The Commonwealth counters that Appellant's act of shooting Jones eight times under the circumstances, causing his death, reflected malice even if a number of shots were fired at Jones' lower body. **See Commonwealth v. Fisher**, 80 A.3d 1186, 1194 (Pa. 2013) (acknowledging fatally shooting one in the leg is "classic third degree murder") (quoting **Commonwealth v. Roebuck**, 32 A.3d 613, 624-25 (Pa. 2011) (Eakin, J., concurring)).

For its part, the trial court viewed the evidence and concluded "Appellant had left the area of the altercation, deliberately went into his house, retrieved a loaded gun, returned to the yard and shot Frank Jones. This was not self-defense, nor was it in the heat of passion." Trial Court Opinion, 8/6/18, at 5. In light of both pertinent authority and the record, which includes evidentiary

support for the jury's finding that Appellant committed a malicious act regardless of the consequences and directly resulting in the death of Jones, we discern no abuse of discretion with the trial court's rejection of Appellant's post-sentence weight of the evidence claim.

In Appellant's second issue, he challenges the court's exercise of sentencing discretion in imposing a standard range sentence for third-degree murder where, he again posits, evidence of malice was lacking. It is well-established that "[a] challenge to the discretionary aspects of sentencing does not entitle an appellant to review as of right." *Commonwealth v. Bynum–Hamilton*, 135 A.3d 179, 184 (Pa.Super. 2016). In order to invoke this Court's jurisdiction to address such a challenge, the appellant must satisfy the following four-part test: the appellant must (1) file a timely notice of appeal pursuant to Pa.R.A.P. 902, 903; (2) preserve the issues at sentencing or in a timely post-sentence motion pursuant to Pa.R.Crim.P. 720; (3) ensure that the appellant's brief does not have a fatal defect as set forth in Pa.R.A.P. 2119(f); and (4) set forth a substantial question that the sentence appealed from is not appropriate under the Sentencing Code under 42 Pa.C.S.A. § 9781(b). *Id.*

While Appellant filed a timely notice of appeal and preserved his sentencing claim in a post-sentence motion, the Commonwealth objects to his failure to include a Rule 2119(f) statement in his appellate brief. When challenging the discretionary aspects of sentence, "an appellant must include in his or her brief a separate concise statement demonstrating that there is a

substantial question as to the appropriateness of the sentence under the Sentencing Code. ***Commonwealth v. Griffin***, 149 A.3d 349, 353–54 (Pa.Super. 2016) (citation omitted). "Where an appellant fails to comply with Pa.R.A.P. 2119(f) and the Commonwealth objects, the issue is waived for purposes of review." ***Commonwealth v. Montgomery***, 861 A.2d 304, 308 (2004). In this case, the Commonwealth's objection to Appellant's failure to adhere to our rules requiring inclusion of a Rule 2119(f) statement in his appellate brief results in the waiver of Appellant's sentencing claim on appeal.[1]

Judgment of sentenced affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/17/19

---

[1] Even if we were to forego finding waiver, we still would conclude Appellant fails to raise a substantial question with the propriety of his standard range sentence, as he merely resubmits his failed weight of the evidence argument that he acted without malice. This argument lacks relevance to the sentencing inquiry a proper discretionary aspects claim would prompt. ***See***, ***e.g.***, ***Commonwealth v. Fullin***, 892 A.2d 843, 848 (Pa.Super. 2006) (holding substantial question raised by claim court improperly based aggravated range sentence on factor constituting element of the offense); ***Commonwealth v. Ritchey***, 79 A.2d 1183, 1186 (Pa.Super. 2001) (holding substantial question raised by claim court provided insufficient reasons for sentence and relied solely on seriousness of offense).